# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1926

---

### ROBERTSON *v.* THE STATE.

No error.

#### No. 5119. MARCH 9, 1926.

Murder. Before Judge Hodges. Fulton superior court. October 1, 1925.

*C. G. Battle* and *J. O. Ewing,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general,* and *Ralph H. Pharr,* contra.

RUSSELL, C. J. Will Robertson was jointly indicted with West Robertson for murder, but Will alone was tried. The jury returned a verdict finding him guilty, but recommended him to mercy. His motion for a new trial was overruled, and exception is taken to that judgment. Aside from the general grounds of the motion for a new trial as originally filed, the defendant filed an amendment containing five additional grounds. The first of these is an amplification of the ground that the verdict is contrary to the evidence, with the consequence that it is also alleged to be contrary to law. It is insisted that the only verdict which the evidence for the State can reasonably support is at most one finding the accused guilty of voluntary manslaughter. Attached

---

Criminal Law, 16 C. J. p. 930, n. 93; p. 964, n. 32; p. 1052, n. 89; p. 1059, n. 42.

Homicide, 30 C. J. p. 290, n. 30; p. 310, n. 25; p. 336, n. 76; p. 346 n. 86, 87; p. 362, n. 61; p. 408, n. 30; p. 448, n. 71 New.

1

to this ground is a brief of substantial portions of the evidence upon which is predicated the argument that the homicide, if not justifiable, can not be of a higher grade than voluntary manslaughter. To quote from the motion: "the circumstances being such as to excite the fears of a reasonable man that a serious personal injury was about to be committed upon his person, and that he acted under the influence of such fears. There is a reasonable doubt, and the weight of the testimony preponderates in favor of the defendant; hence the verdict of guilty of murder with a recommendation and a life sentence is unsupported, and therefore contrary to law and contrary to the evidence. A new trial should be granted." There are conflicts in the evidence quoted in this ground, but we see nothing in the evidence which would have compelled the jury to find a verdict of voluntary manslaughter. The jury has the right of selecting the testimony which it will believe. Any one of the witnesses testifying as to the point in question might have been believed by the jury to the exclusion of all the others. According to the testimony of Robert Johnson, quite a company were at a dance, among others, the accused and the deceased, whose name was Raiford Newman. To quote from the brief of this witness's testimony: "He was at the scene of the shooting at the time the same took place, and . . after awhile Raiford came in there, and Raiford say 'Buttermilk,' and Raiford went back in the front room and began dancing. Will says, 'I wonder what the hell he means by saying "buttermilk,"' and some of them say he didn't mean nothing; so he sent a little slick-haired boy in the front room after him to find out what this boy had in his pocket. Will say, 'Go up there and tell that son of a—— to come in here;' [Will]—he say, 'What you mean by saying "buttermilk?"' He say, 'That's just a word we use down on Decatur street,' and John say, 'Oh, well, he don't mean no harm,' and commenced patting Will on the shoulder; first thing I heard three bullets, and when I heard the bullets, this boy turned around to run. I fell and slid under the bed, and after I slid under the bed everybody got out. When Raiford came and stopped in the door between the middle room and the kitchen, Will says, 'What you mean by saying "buttermilk?"' Raiford says something about some Decatur street expression. John patted Will Robertson on the shoulder, and says, 'That's nothing bad, just a word they use

down on Decatur street,' and Will stood there talking, and Raiford began to talk again, trying to explain himself about that buttermilk proposition. I don't remember what Raiford said, when Raiford was talking to Will, and tried to explain, and before he could explain, Will Robertson shot three times hitting Raiford and John Brown. Raiford was hit first, twice, before he got John. Raiford went through the front door and fell on the doorsteps out at the front door. Raiford didn't have anything in his hand at the time Will Robertson shot him; he didn't have anything or try to do anything to Will Robertson. When he was shot, the position he was in, he had one hand down this way by his pocket, and one hand in his pocket, standing up facing into the kitchen; he was standing in this position, with his right hand in his front pocket and his left hand hanging down by his side. He stood still where he was until he was shot."

Another witness testified that when Raiford Newman was shot, "Raiford Newman was standing there and say, 'Hope you people, I find you all well; if you don't want your milk to sour, let it stay in the cow;' and that time Will say, 'What you mean by that, son?' He say, 'Oh, Mr. Will, I don't mean no harm at all.' Then he asked what he meant by it. I say, 'He don't mean no harm,' and he told me to call that boy back. I don't know who called him back. When he came, he said, 'What in the hell you mean by that?' and he says, 'I don't mean no harm, Mr. Will, at all, that's a word we use down on Decatur street,' and he asked me about it, and I said, 'Mr. Will, he don't mean no harm; the boy stay in your boarding-house,' and that time he shot, and shot three times, shot Raiford twice and me once. Raiford didn't have in his hand, when he was shot, nothing but a cigarette stump."

1. It is plain that under this testimony the jury was fully authorized to find a verdict of guilty of murder, and therefore were not required to find the defendant guilty merely of voluntary manslaughter. Even if there is other testimony which might authorize a verdict for voluntary manslaughter, a review of the charge of the court shows that the jury was fully and fairly instructed as to the law of voluntary manslaughter; and no exception is taken to the instructions of the court as to the application of the law to the facts if the jury found evidence which would authorize a finding of voluntary manslaughter. There was evidence which

would have authorized an acquittal, because the defendant introduced testimony that the deceased fired the first shot without any notice and under circumstances which afforded no justification. But this testimony in behalf of the accused would neither have required nor authorized a verdict for voluntary manslaughter. This testimony, if credible, would have required the jury to return a verdict of not guilty. There is no testimony in the record indicating a mutual intention to fight. As we see it, the witnesses for the State swear to a state of facts which legally can only compel the conclusion that the homicide was an unprovoked murder. The defendant in his statement and the witnesses in his behalf proved a plain case of justifiable homicide; but certainly the defendant can not complain, inasmuch as the charge of the court permitted the jury to find the defendant guilty of voluntary manslaughter if the circumstances were such as to have suggested any reason deducible from the evidence to support such a finding.

2. · Complaint is made that the court erred in charging the jury: "When an unauthorized killing is shown, the law presumes it was done with malice aforethought. When the proof shows an unlawful killing, in the absence of all else, the law implies it was done with malice aforethought. If the proof that shows the killing itself discloses that it was done without malice, this presumption does not exist; but if the accompanying proof does not, then the burden is thrown upon the defendant to show that it was done without malice." It is insisted that this charge is "erroneous, it is inapt, incorrect, confusing, and intimates and expresses an opinion as to a material fact in issue in the case; it invades the province of the jury and decides for them a material fact which they must find from the facts and circumstances involved in the trial of the case, including the defendant's statement and any testimony he may introduce. Forethought is synonymous with premeditation, and is a substantive fact which must be proved, and is not presumed as a matter of law; it is for the jury to say, and not the judge. To charge that malice aforethought is presumed upon proof of an unlawful killing is an expression of an opinion by the court that the killing was premeditated." It is further insisted that this instruction "has the effect to constrain a finding for murder where the jury might otherwise convict only of voluntary manslaughter; it denied the defendant the benefit of a theory and fact

favorable to his defense, and is most hurtful to his case." The instruction to which exception is taken, in our opinion, is not subject to any of the foregoing exceptions. While the rule is frequently stated to the effect that the law presumes every homicide to be malicious until the contrary is made to appear from circumstances of alleviation, excuse, or justification, and counsel admits that such a statement would not be error, there is no real difference in the rule thus stated and the statement made by the judge as above quoted.

3. In the third special ground of the motion for a new trial it is assigned as error that the court charged: "If the proof that shows the killing itself discloses that it was done without malice, this presumption does not exist; but if the accompanying proof does not, then the burden is thrown on the defendant to show that it was done without malice." The plaintiff in error complains that the court failed to instruct the jury "whether the defendant must, as a matter of fact or of law, carry such burden and establish the same beyond a reasonable doubt, or whether he must carry such burden and establish the same to the satisfaction of the jury. The law presumes every homicide to be malicious until the contrary appears from circumstances of alleviation, excuse, or justification, and it is incumbent on the defendant to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him. The charge of the court, as thus given, carries with it the idea that the defendant must establish such fact of want of malice beyond a reasonable doubt, which is not the law." It is a well-settled principle that a reversal will not be granted because the court, in giving an instruction which in and of itself is a correct statement of the law, does not add some other and additional instruction. We think there could be no misapprehension on the part of the jury upon the idea that the defendant would have to carry a burden of proving anything beyond all reasonable doubt, and the jury would readily understand without instructions that the burden of proving facts beyond all reasonable doubt applies, in criminal prosecutions, only to the State. If the plaintiff in error had desired the court to state this specifically to the jury, and that the court should inform them that the word "burden" included nothing except the satisfaction of

the jury to a reasonable degree, an appropriate request should have been presented.

4. The fourth special ground of the motion for a new trial is as follows: "Because the court erred in charging· the jury the law of the case, by charging them as follows: 'Malice is excluded if the intention to kill grows out of hot blood produced by provocation other than that produced by mere words, threats, menaces, or contemptuous gestures. If the provocation be produced by an actual assault, by attempt to commit a serious personal injury upon the person killing, or by other equivalent circumstances calculated to excite sudden passion, the fact that the defendant shot with the intention to kill would not render the offense that of murder; but if the killing occurred under such circumstances, and was unlawful, the slayer would be guilty of voluntary manslaughter.' " The instruction quoted is not erroneous for any reason assigned.

5. In the fifth special ground of the motion for a new trial it is assigned as error that the court charged the jury as follows: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder, nor to reduce the homicide from murder to manslaughter, unless under all of the circumstances of the case, taken in connection with all the other acts of the deceased, you believe they were sufficient to excite the fears of a reasonable man." The exception to this charge is not meritorious. The instruction is assigned as error upon the ground that it "is an incorrect, inapt, and unfair statement of the law; it was prejudicial and harmful to the defendant's right to a fair trial; it invaded the province of the jury, and decided a question of fact which, by law, they were sworn to find from all the facts of the case, including the defendant's statement; it deprived defendant of any consideration which the jury might give to his statement in passing upon the question about which the court was then instructing them on the law of the case." Plaintiff in error further insists that "to hold that such a charge is the law would be to exclude, as a defense in such cases, the fears of a reasonable man, and to say as matter of law that such fears are unreasonable, when it can't be said as a matter of fact." It appears from a careful examination of the entire charge of the court that the jury were fully and fairly instructed that if the accused at the time of the homicide

was acting under the fears of a reasonable man that either his life was in danger or that a felony was about to be committed upon him, the homicide would be justifiable; that if he killed under the fear that he was in danger of an offense less than a felony, he might be convicted of voluntary manslaughter. The jury was correctly instructed as to the statement of the defendant, and they were more than once instructed that a killing either in self-defense or under the influence of fears of a reasonable man entitled the accused to an acquittal. For these reasons we see no merit in the motion for a new trial, and after a careful examination we discover no error. *Judgment affirmed. All the Justices concur.*